UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

United States of America

    v.                                      Criminal No. 18-cr-133-01-JL
                                                    Opinion No. 2018 DNH 227

Luis Vigniero Mejia

**MEMORANDUM ORDER**

    Resolution of this motion to dismiss a criminal indictment turns on whether the Immigration Court had jurisdiction to order the defendant removed. The grand jury charged defendant Luis Vigniero Mejia with one count of reentry after deportation in violation of 8 U.S.C. § 1326.[1] Vigniero Mejia, who has twice previously been deported from the United States, seeks dismissal of this charge through a collateral attack on his first removal order. Specifically, he argues that, under the Supreme Court's recent decision in Pereira v. Sessions, 138 S. Ct. 2105 (2018), the Immigration Court that ordered his first removal in 1999 lacked subject-matter jurisdiction to issue his final removal order. As a result of that order's infirmity, he argues that his present charge of reentry after deportation lacks the necessary predicate of a valid deportation.

---

[1] Indictment (doc. no. 7).

To collaterally attack a removal predicate to a charge for illegal reentry, a defendant must generally satisfy the requirements of 8 U.S.C. § 1326(d). Vigniero Mejia has not done so here. Nor is the court inclined to extend Pereira's narrow holding to divest an immigration court of jurisdiction over removal proceedings where the initial notice to appear lacked the time and date of the removal hearing, especially where a subsequent notice conveyed that information to the defendant such that he appeared. Accordingly, the court denies Vigniero Mejia's motion to dismiss his indictment.

I. **Background**

Vigniero Mejia, a citizen of the Dominican Republic, first entered the United States in 1991. He became a lawful permanent resident in 1994. Three years later, he was convicted of two felonies and a misdemeanor. As a result, in September 1999, the Immigration and Nationalization Service (INS) instituted removal proceedings.

He was served with a Notice to Appear for removal proceedings, which charged him with removability for committing multiple crimes of moral turpitude.[2] The notice listed the date and time of his removal hearings as "to be set."[3] Vigniero Mejia

---

[2] Gov't Ex. 1 (doc. no. 13-1).

[3] Id. at 18R203-28.

signed the Notice to Appear, thereby acknowledging his receipt and understanding of the document,[4] and was taken into custody.

On October 13, 1999, he was served with a hearing notice, which set the time and date for his removal hearing for November 3, 1999 at 9:00am.[5] Vigniero Mejia, along with his attorney, appeared at the hearing as scheduled. The Immigration Judge ordered him removed to the Dominican Republic for having committed crimes of moral turpitude,[6] and he was then deported. Vigniero Mejia neither moved to reopen his proceedings nor appealed the decision.

After entering the United States a second time, Vigniero Mejia was again deported in April 2007, upon reinstatement of the 1999 removal order. He reentered again on July 14, 2018, leading to his present indictment for illegal reentry.

## II. **Analysis**

Generally, to successfully attack a deportation order underlying a charge of illegal reentry, the defendant must demonstrate that "(1) [he] exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued

---

[4] Id. at 18R203-29.

[5] Gov't Ex. 2 (doc. no. 13-2).

[6] Gov't Ex. 4 (doc. no. 13-4).

improperly deprived the alien of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair." 8 U.S.C. § 1326(d). Vigniero Mejia has not satisfied these requirements. Nor does he argue that he has. Rather, he contends that the Immigration Court lacked subject-matter jurisdiction to issue that order, rendering his final deportation order void. Concluding that the Immigration Court had subject-matter jurisdiction, the court denies his motion to dismiss.

A.  **Immigration Court's subject-matter jurisdiction**

Vigniero Mejia argues that the Immigration Court lacked subject-matter jurisdiction to issue his removal order because the initial notice to appear before it failed to designate a specific time or place for his appearance.[7] He derives this argument from the definition of "notice to appear" in 8 U.S.C. § 1229(a)(1), regulations promulgated under that statute, and a broad interpretation of the Supreme Court's recent decision in Pereira v. Sessions, 138 S. Ct. 2105 (2018). The court declines to adopt so broad an interpretation of that decision and concludes that lack of the time and place in Vigniero Mejia's initial notice to appear did not divest the Immigration Court of subject-matter jurisdiction to issue his removal order.

---

[7] Mot. to Dismiss (doc. no. 10) at 5-6.

4

Under the applicable regulations, "[j]urisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court by the Service." 8 C.F.R. § 1003.14(a). A "charging document" is "the written instrument which initiates a proceeding before an Immigration Judge." Id. § 1003.13. A "Notice to Appear" is one such document. Id.

A related statute provides that written notice, called a "notice to appear," must be given to an alien in removal proceedings, and that such written notice must specify, among other things, "[t]he time and place at which the proceedings will be held." 8 U.S.C. § 1229(a)(1)(G)(i). "[I]n the case of any change or postponement in the time and place of such proceedings . . . a written notice shall be given in person to the alien . . . specifying," among other things, "the new time or place of the proceedings." Id. § 1229(a)(2)(A)(i).

Pursuant to regulations promulgated under 8 U.S.C. § 1228(a), allowing that "the Service shall provide in the Notice to Appear, the time, place and date of the initial removal hearing, where practicable," 8 C.F.R. § 1003.18 (emphasis added), Vigniero Mejia's initial Notice to Appear did not include the time and date of the hearing. Instead, it

indicated that those were "to be set."[8]  The regulations further provided that, if the time and date were "not contained in the Notice to Appear, the Immigration Court shall be responsible for scheduling the initial removal hearing and providing notice to the government and the alien of the time, place, and date of hearing."[9]  8 C.F.R. § 1003.18.  It did so in Vigniero Mejia's case, setting a hearing for November 3, 1999 at 9:00am, and providing Vigniero Mejia with a notice of that hearing, dated October 13, 1999.[10]  Vigniero Mejia, accompanied by his counsel, attended the hearing.  The Immigration Judge subsequently ordered his removal.  And, in 2007, he was removed a second time upon reinstatement of that order.

In Pereira, the Supreme Court interpreted § 1229(a) in the context of the stop-time rule, holding that "[a] putative notice to appear that fails to designate the specific time or place of the noncitizen's removal proceedings is not a 'notice to appear under section 1229(a),' and so does not trigger the stop-time

---

[8] Gov't Ex. 1 (doc. no. 13-1) at 18R203-27.

[9] At oral argument, the defendant suggested that Pereira explicitly rejected this regulation.  The court does not read Pereira to do so, except perhaps as to its application in the context of the stop-time rule.  Even if Pereira rejected it, explicitly or implicitly, the Court in no way indicated that the lack of a time or date on the initial Notice to Appear divested the Immigration Court of jurisdiction as provided by 8 C.F.R. § 1003.14(a).

[10] Gov't Ex. 2 (doc. no. 13-2) at 18R203-25.

6

rule." 138 S. Ct. at 2113-14.  Under that rule, "any period of . . . continuous physical presence in the United States shall be deemed to end . . . when the alien is served a notice to appear under section 1229(a) of this title." Id. § 1229b(d)(1)(A). This is important to certain forms of discretionary relief that may be afforded to nonpermanent residents who have, among other requirements, "been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of [an] application" for cancellation of removal.  8 U.S.C. § 1229b(b)(1)(A).

Invoking Pereira, Vigniero Mejia argues that his initial Notice to Appear was not a "Notice to Appear" for purposes of 8 C.F.R. § 1003.13, and thus could not constitute a "charging document" under 8 C.F.R. § 1003.14(a), because it did not indicate the time and date of the hearing, as required by 8 U.S.C. § 1229(a) under the interpretation in Pereira.  And, he argues, because no "charging document" was filed with the Immigration Court, jurisdiction never vested in that court.  His 1999 removal order and the 2007 reinstatement of that order thus lacked the force of law, he concludes, and therefore cannot serve as a predicate removal for purposes of 8 U.S.C. § 1326.

A few courts have adopted this interpretation of Pereira, granting motions to dismiss on this basis.  E.g., United States v. Valladares, No. 17-cr-156-SS, slip op. at 12-13 (Oct. 30,

2018); United States v. Virgen-Ponce, 320 F. Supp. 3d 1164, 1166 (E.D. Wash. 2018); United States v. Zapata-Cortinas, No. SA-18-CR-00343-OLG, 2018 WL 4770868, at *3-4 (W.D. Tex. Oct. 2, 2018); United States v. Pedroza-Rocha, No. EP-18-cr-1286-DB, 2018 U.S. Dist. LEXIS 178633, at *9-10 (W.D. Tex. Sep. 21, 2018).

The majority, however, have rejected it--especially where, unlike Pereira but like this case, the defendant did receive notice of the time and date of his hearing and appeared. E.g., United States v. Mendoza-Sanchez, No. 17-CR-189-JD, 2018 WL 5816346, at *3 (D.N.H. Nov. 5, 2018) (DiClerico, J.); Romero-Colindres, 2018 WL 5084877, at *2; United States v. Larios-Ajualat, No. 18-10076-JWB, 2018 WL 5013522, at *6-7 (D. Kan. Oct. 15, 2018); Lira-Ramirez, 2018 WL 5013523, at *6-7; United States v. Rosa Fernandez, No. 7:18-CR-11-BO-1, 2018 WL 4976804, at *1 (E.D.N.C. Oct. 15, 2018); United States v. Munoz-Alvarado, No. CR-18-171-C, 2018 WL 4762134, at *1 (W.D. Okla. Oct. 2, 2018); United States v. Ibarra-Rodriguez, No. CR-18-190-M, 2018 WL 4608503, at *2-3 (W.D. Okla. Sept. 25, 2018); United States v. Morales-Hernandez, No. CR1800365TUCRCCJR, 2018 WL 4492377 (D. Ariz. Sept. 18, 2018).

This court is likewise disinclined to extend Pereira to this context. First, nowhere in Pereira did the Supreme Court suggest that its interpretation of § 1229(a) vis-à-vis the stop-time rule acted to strip immigration courts of jurisdiction over

removal proceedings.  To the contrary, the Court emphasized the narrow scope of its ruling.  See Pereira, 138 S. Ct. at 2110 (describing "[t]he narrow question in this case" as whether a notice to appear that "fails to specify either the time or place of the removal proceedings . . . trigger[s] the stop-time rule"); id. at 2113 (describing the question addressed as "much narrower" than the question presented by the appellant).

Second, unlike the stop-time rule, neither the jurisdiction-vesting provision of 8 C.F.R. § 1003.14(a) nor the definition of charging document under § 1003.13 expressly requires that a notice to appear contain the information set forth in § 1229(a).  Nor do they cross-reference § 1229(a) when defining the notice to appear, as the stop-time rule does.

Finally, even assuming that the initial notice to appear ran afoul of § 1229(a) in a manner that precluded the Immigration Court from exercising jurisdiction, the subsequent notice of hearing setting a date and time cured any defect in the initial notice to appear.  See Rosa Fernandez, 2018 WL 4976804, at *1.  While the analogy is not perfect, it is instructive that a federal district court may lack subject-matter jurisdiction under 28 U.S.C. § 1332 (diversity) where the plaintiff failed to allege in its complaint the citizenship of the parties or an amount in controversy over $75,000.  See Milford-Bennington R. Co. v. Pan Am Railways, Inc., 695 F.3d

175, 178 (1st Cir. 2012) (plaintiff has burden of pleading facts in support of diversity jurisdiction). The court may, however, exercise jurisdiction over such a case after the plaintiff amends the complaint to include the necessary jurisdictional facts. That is to say, the lack of jurisdictional information is not in and of itself fatal to the court's jurisdiction; just as it may be cured in the civil context, the subsequent written notice informing Vigniero Mejia of the time and date of his proceedings cured any defect in the original Notice to Appear.

**B.   Section 1326(d) requirements**

Having concluded that the lack of time or date on the original notice to appear did not deprive the Immigration Court of subject-matter jurisdiction to issue a removal order, the court turns to whether Vigniero Mejia has satisfied the requirements for mounting a collateral challenge to such an order under 8 U.S.C. § 1326(d). He has not.

**1.   Exhaustion of administrative remedies**

First, Vigniero Mejia has not demonstrated--indeed, has not attempted to demonstrate--that he exhausted his administrative remedies. Appeal of a removal order "to the Board of Immigration Appeals (BIA) is such an administrative remedy, and . . . failure to take such an appeal constitutes a failure of

exhaustion." United States v. DeLeon, 444 F.3d 41, 50 (1st Cir. 2006).

Vigniero Mejia does not claim that he appealed his removal order to the BIA. He argues, instead, that his underlying removal order was unlawful because the Immigration Court lacked jurisdiction to issue it.[11] Some courts have acknowledged that "exhaustion is not required . . . where the administrative proceeding would be void." Shawnee Coal Co. v. Andrus, 661 F.2d 1083, 1093 (6th Cir. 1981). Cf. United States v. Romero-Colindres, No. 1:18-CR-00415, 2018 WL 5084877, at *2 (N.D. Ohio Oct. 18, 2018) (addressing this argument in the § 1326(d) context). As explained supra Part II.A, however, Vigniero Mejia's initial Notice to Appear did not deprive the Immigration Court of jurisdiction, rendering this argument moot.

### 2. Deprivation of opportunity for judicial review

Nor has Vigniero Mejia must argued that his deportation proceedings "deprived [him] of the opportunity for judicial review." 8 U.S.C. § 1326(d)(2). An Immigration Judge's "failure to adequately explain the availability of relief, resulting in an uninformed waiver of the right to appeal, [is] an error that deprive[s] [defendants] of their opportunity for judicial review." United States v. Luna, 436 F.3d 312, 319 (1st

---

[11] Mot. to Dismiss (doc. no. 10) at 3-6.

11

Cir. 2006) (citing United States v. Mendoza-Lopez, 481 U.S. 828, 842 (1987)).  Nothing in the record suggests a failure of that nature -- or any other deprivation of an opportunity for judicial review -- in Vigniero Mejia's case.

### 3. Fundamental fairness

Finally, Vigniero Mejia has not demonstrated that "the entry of [his removal] order was fundamentally unfair." 8 U.S.C. § 1326(d)(3).  To satisfy this requirement, the defendant must demonstrate both "a procedural error and prejudice." Luna, 436 F.3d at 319.  Specifically, he must "show prejudice in the sense of a reasonable likelihood that the result would have been different if the error in the deportation proceeding had not occurred." United States v. Loaisiga, 104 F.3d 484, 487 (1st Cir. 1997).

Vigniero Mejia received notice of the hearing and attended it accompanied by counsel.  He thus cannot demonstrate the prejudice required to satisfy that requirement -- that "the result would have been different if the error in the deportation proceeding had not occurred." Loaisiga, 104 F.3d 484, 487 (1st Cir. 1997).

## III. Conclusion

The Immigration Court had jurisdiction to issue Vigniero Mejia's removal order and he has not satisfied the requirements

12

set forth in 8 U.S.C. § 1326(d) for mounting a collateral attack on that order. His motion to dismiss his indictment[12] is, therefore, DENIED.

**SO ORDERED.**

_/s/ Joe Laplante_
Joseph N. Laplante
United States District Judge

Dated:   November 19, 2018

cc: Anna Z. Krasinski, AUSA
    Jonathan R. Saxe, Esq.

---

[12] Doc. no. 10.